IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | Criminal No.  1:22-CR-207 (GTS) |
| | ) | |
| v. | ) | |
| | ) | |
| **SEAN MORRISSEY,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## OFFER OF PROOF

In anticipation of the defendant's scheduled change of plea, the United States submits this Offer of Proof to provide the Court with and advise the defendant concerning the potential maximum penalties, a non-exhaustive list of adverse consequences that may flow from conviction, the elements of the offense, and a factual basis for the defendant's guilty plea.  **The government respectfully requests that the Court ask the defendant to acknowledge the accuracy of the factual basis or to state with specificity any disagreement with any of the facts described in it.**

**1)** **Potential Maximum Penalties:** The Court can impose the following maximum penalties for the offense to which the defendant is pleading guilty and may be required to impose mandatory minimum terms of imprisonment, all as set out below:

a) **Maximum term of imprisonment:** 2 years, pursuant to 18 U.S.C. § 2244(a)(4).

b) **Maximum fine:** $250,000, pursuant to 18 U.S.C. § 3571.

c) **Supervised release term:**  In addition to imposing any other penalty, the sentencing court may require the defendant to serve a term of supervised release of up to 1 year, to begin after imprisonment. *See* 18 U.S.C. § 3583.  A violation of the conditions of supervised

release during that time period may result in the defendant being sentenced to an additional term of imprisonment of up to 1 year. *Id.*

d) **Special Assessment:** The defendant will pay an assessment of $100 per count of conviction, pursuant to 18 U.S.C. § 3013.

e) **Required Registration for Sex Offenders:** Under the Sex Offender Registration and Notification Act, the defendant, as a result of the conviction in this case, must register as a sex offender, and keep the registration current, in each jurisdiction where the defendant resides, where the defendant is an employee, and where the defendant is a student. For initial registration purposes, the defendant also must register in New York as a result of this conviction, even if the defendant resides in a different jurisdiction. A sex offender who knowingly fails to register or update a required registration may be subject to prosecution under 18 U.S.C. § 2250, and face a penalty of up to ten years imprisonment.

**2)** **Other Adverse Consequences:**

a) Conviction of a felony may result in the loss of civil rights, including, but not limited to, the right to vote and the right to possess firearms.

b) If the defendant is not a United States citizen, such conviction may result in deportation or removal from the United States, may bar readmission to the United States if the defendant leaves the country, and may result in a denial of a pending or future application for citizenship. Under federal law, removal or deportation may be an almost certain consequence of a conviction for a broad range of federal offenses, including, but not limited to, aggravated felonies, as defined in 8 U.S.C. § 1101(a)(43), and crimes of moral turpitude, which includes crimes involving fraud. Removal and other immigration consequences are the subject of a separate proceeding. No one, including the defendant's attorney and the

Court, can predict with certainty the effect of the conviction resulting from this agreement on the defendant's immigration status. The defendant understands this uncertainty and nonetheless wishes to plead guilty regardless of any immigration consequences that the guilty plea may entail, even if the consequence is the defendant's automatic removal from the United States.

   c) A felony conviction may adversely affect the defendant's ability to hold certain professional licenses and may impair the defendant's ability to do business with federal, state, and local governments or to receive benefits from such governments.

3) **Elements of Offense:**
   a) First, that the defendant knowingly engaged in sexual contact with A.M.;
   b) Second, at the time, A.M. was in official detention at the Rensselaer County Correctional Facility;
   c) Third, at the time, A.M. was under the custodial, supervisory, or disciplinary authority of the defendant; and
   d) Fourth, that the defendant's actions took place in any prison, institution, or facility in which persons are held in custody by direction of or pursuant to a contract or agreement with the head of any Federal department or agency.

4) **Factual Basis for Guilty Plea:**
   a) At all relevant times, federal prisoners were housed at the Rensselaer County Correctional Facility ("RCCF") in Rensselaer County, New York, pursuant to an agreement between the United States Marshals Service ("USMS") and the RCCF. That agreement called "for the housing, safekeeping, and subsistence of federal prisoners" by the RCCF.

b) The defendant was a correctional officer at RCCF.

c) On February 23, 2018, A.M. was charged with a felony by federal criminal complaint in the U.S. District Court for the Northern District Court, arrested, and detained pending trial by order dated March 9, 2018. Pursuant to that order and the agreement between the USMS and the RCCF, A.M. was detained at the RCCF from March 9 through September 30, 2018. A.M. was housed in the female unit, N-2, at the RCCF.

d) As a federal inmate, A.M. wore a green wristband; local inmates wore clear or white wristbands, and parole inmates wore blue or purple wristbands. The defendant worked in the N-2 unit, spoke at length with A.M., and was aware of her status as a federal inmate.

e) On September 7, 14, 20, and 18, 2018, the defendant was the sole correctional officer assigned to the N-2 unit from 3:30 p.m. to 11:30 p.m. As a correctional officer, the defendant had custodial, supervisory, and disciplinary authority over A.M. and the other inmates in the N-2 unit.

f) As the defendant was aware, except for the interiors of the laundry room and the showers, video cameras recorded the N-2 unit. Recordings from the cameras in the N-2 unit reveal that the defendant and A.M. were alone together in the laundry room for approximately 1 minute and 8 seconds starting at approximately 11:00 p.m. on September 7, 2018; were alone together in the showers for approximately 52 second starting at approximately 10:57 p.m. on September 14, 2018; were alone together in the laundry room for approximately 1 minute and 52 second starting at approximately 11:00 p.m. on September 20, 2018; and were alone together in the showers for approximately 2 minutes and 40 seconds starting at approximately 11:12 p.m. on September 21, 2018.

g) In speaking with law enforcement, A.M. stated that the defendant touched her breasts and genitals, both through and beneath her clothing, in the laundry room and showers on September 7, 14, 20, and 18, 2018.

h) On September 25, 2018, the defendant spoke with an investigator with the Rensselaer County Sheriff's Office about his interactions with A.M. at the RCCF. During the conversation, which was recorded, the defendant admitted to kissing A.M. and rubbing her vagina over her underwear. When the investigator described the defendant's contact with A.M. as "putting your hand inside the clothes and, and, ah, rubbing the vagina and then just kissing her and stuff," the defendant responded, "It's still wrong," followed by, "I fucked up."

Respectfully submitted,

CARLA B. FREEDMAN
United States Attorney

| | |
|---|---|
| */s/ Benjamin S. Clark* | 9/15/2022 |
| Benjamin S. Clark | Date |
| Assistant United States Attorney | |
| Bar Roll No. 703519 | |